UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BERENICE DE LA CRUZ,<br><br>    Plaintiff,<br><br>v.<br><br>ASAP CREDIT REPAIR, LLC,<br><br>    Defendant. | Case No. 4:23-cv-02421<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** BERENICE DE LA CRUZ ("Plaintiff"), by and through her undersigned counsel, complaining as to the conduct of ASAP CREDIT REPAIR, LLC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. §1679 *et seq.*, the Texas Credit Services Organizations Act ("TCSOA") under Tex. Fin. Code §393.101 *et seq.*, and the Texas Consumer Debt Management Services Act ("TCDMSA") under Tex. Fin. Code §394.201 *et seq.*, stemming from Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the CROA, and 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

1

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in the Southern District of Texas, and all of the events or omissions giving rise to the claims occurred in the Southern District of Texas.

## PARTIES

5. Plaintiff is consumers over 18-years-of-age who reside in the Houston, Texas.

6. Defendant is a credit repair organization that claims to help consumers repair their credit scores by removing derogatory items reporting on their consumer reports.[1] Defendant is a limited liability company organized under the laws of the state of Texas that maintains its principal place of business at 15915 Katy Freeway #550, Houston, TX 77094.

7. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

8. In early 2020, Plaintiff needed to address various debts that had accumulated and were reporting on her credit reports, and so began searching for credit repair and debt consolidation programs to assist in her efforts. Specifically, Plaintiff had gone through a divorce and had various debts that her ex-husband had accrued that were not related to her that had begun to report on her credit reports.

9. Shortly thereafter, Plaintiff was referred to Defendant's website and set up a phone call to discuss the various debts and credit reporting issues with Defendant's representative.

10. Plaintiff explained to Defendant the nature of the debts she wanted to enroll, and Defendant advised that they could enroll her debts in its program and would be able to dispute

---

[1] https://asapcreditrepairusa.com/how-it-works.php

each of her debts with her creditors and ultimately remove all derogatory and inaccurate information from her consumer credit reports.

11. Additionally, Plaintiff was informed that Defendant could delete all of the alternate names that were reporting under her social security number and remove debts that were old and not under her legal name.

12. Specifically, Plaintiff was informed that she would no longer need to worry about her credit scores and that Defendant will be able to have all of the negative accounts removed from her consumer credit reports.

13. Further, Defendant informed Plaintiff that she would begin to see improved scores and removed items from her credit report within six months.

14. Plaintiff detrimentally relied on Defendant's lofty promises.

15. On January 3, 2020, Plaintiff, finding Defendant's promises to assist in her efforts to reestablish her financial foothold desirable, agreed to utilize Defendant's services and entered into a contract with Defendant for the provision of the same.

16. Plaintiff paid $150 up front and $185 a month to Defendant for as long as Plaintiff was enrolled into its program.

17. Plaintiff completed fourteen months of Defendant's program.

18. Over the course of the aforementioned fourteen months utilizing Defendant's program, Plaintiff faithfully made her payments to Defendant.

19. During the time frame that Plaintiff was enrolled in Defendant's program, Defendant largely failed to perform the represented services for Plaintiff, let alone achieve the benefits or results that it represented it would achieve for Plaintiff within six months.

3

20. Despite Plaintiff making no less than $2,740 in payments to Defendant, Defendant did not resolve the accounts for Plaintiff.

21. Moreover, Plaintiff was informed that a significant sum was used from her account for Defendant just to pay itself.

22. Upon information and belief, rather than apply Plaintiff's payments to resolving obligations, Defendant instead caused Plaintiff to be charged for various service and other related fees before performing, or fully performing, the services justifying Defendant's retention of such fees.

23. Plaintiff was informed that the subject accounts were being taken care of and were actively being disputed and removed.

24. Despite Plaintiff making her monthly payments to Defendant, believing that her debts were actively being disputed and removed from her credit, not all of Plaintiff's debts have been satisfied by Defendant.

25. Defendant's refusal to assist Plaintiff represents the deceptive nature of Defendant's representations that it will work with its customers to resolve debts with problematic creditors.

26. Upon information and belief, Defendant knowingly informs consumers that they can resolve her debts, despite similarly knowing it would be unable to achieve those represented results, in particular considering the nature of the debts which were enrolled in its program.

27. Further, the contract between Plaintiff and Defendant failed to include the information and disclosures Defendant was required to provide to Plaintiff under federal and state law.

28. At no point did Defendant provide Plaintiff with all of the disclosures required by

federal law.

29. Defendant's failure to provide Plaintiff the relevant information and disclosures inhibited Plaintiff's ability to chart an intelligent course of conduct in connection with her dealings with Defendant.

30. Upon realizing the nature of Defendant's scheme and the full extent of their misrepresentations, Plaintiff contacted Defendant to address to Defendant's conduct.

31. Frustrated, distressed, and concerned over Defendant's conduct, Plaintiff spoke with the undersigned counsel regarding her rights.

32. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, emotional distress, aggravation, mental anguish, pecuniary loss stemming from the payments made to Defendant for deficient credit repair services, incurrence of inappropriate court fees, as well as numerous violations of her state and federally protected interests to be free from deceptive and misleading conduct on the part of purported credit repair organizations.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

33. Plaintiff repeats and realleges paragraphs 1 through 32 as though fully set forth herein.

34. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

35. Defendant is a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

### a.    Violations of CROA § 1679b(a)

36.     The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

37.     Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services it would provide Plaintiff. In order to get Plaintiff to agree to utilize Defendant's services, Defendant touted the efficacy of its credit repair services and that Plaintiff could expect an improved credit score as long as he maintained his monthly payments. Plaintiff made his required payment, Defendant failed to improve Plaintiff's credit scores, instead Defendant's inactions have caused Plaintiff's score to decline.

### b.    Violations of CROA § 1679b(b)

38.     The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

39.     Defendant violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendant's practice of charging a retainer for services upfront, before such services is performed, is inherently in violation

of the CROA. Defendant similarly withheld sums for credit repair services it never actually performed.

### c. Violation of CROA §1679c

40. The CROA provides that a credit repair organization must provide consumers with certain written disclosures in the contract underpinning the provision of credit repair services to consumer. Pursuant to 15 U.S.C. § 1679c(b), "the written statement required under this section shall be provided as a document which is separate from any written contract or other agreement between the credit repair organization and the consumer or any other written material provided to the consumer."

41. Defendant violated 15 U.S.C. §§ 1679c(a)-(b) through its failure to provide the written disclosures required under § 1679c. Defendant never provided such disclosures, nor did it provide a separate document containing such disclosures.

### c. Violation of CROA §§ 1679d(4) and 1679e

42. The CROA, pursuant to 15 U.S.C. § 1679d(4), requires credit repair organization to include, in the contract between them and a consumer, "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679e further outlines the extent of a consumer's cancellation rights under CROA while requiring such disclosure to be given to consumers in writing.

43. Defendant violated 15 U.S.C. §§ 1679d(4) & 1679e through its complete failure to provide the above disclosure in immediate proximity to the space reserved for Plaintiff's signature

on the contract, as well as its failure to provide the notice of cancellation to Plaintiff.

44. As alleged above, Plaintiff was severely harmed by Defendant's conduct.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court to enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff actual damages to be determined at trial as provided under 15 U.S.C. § 1679g(a)(1);

c. Awarding Plaintiff punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATIONS OF THE TEXAS CREDIT SERVICES ORGANIZATION ACT

45. Plaintiff restates and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 393.001(1).

47. Defendant is a "credit services organization" as defined by Tex. Fin. Code § 393.001(3).

### a. Violations of Tex. Fin. Code §§ 393.304(1) & 393.305

48. The TCSOA, pursuant to Tex. Fin. Code § 393.304(1), prohibits a credit services organization from "mak[ing] or us[ing] a false or misleading representation in the offer or sale of the services of the organization." Similarly, pursuant to Tex. Fin. Code § 393.305, "[a] credit services organization or a representative of the organization may not directly or indirectly engage

8

in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of the services of the organization."

49.     Defendant violated §§ 393.304(1) & 393.305 in much the same way it violated §§ 1679b(a)(3)-(4) of the CROA.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;
   b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 393.503(a)(1);
   c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 393.503(b);
   d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 393.502,
   e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code §§ 393.503(a)(2)-(3); and,
   f. Awarding any other relief this Honorable Court deems just and appropriate.

**COUNT III – VIOLATIONS OF THE TEXAS CONSUMER DEBT MANAGEMENT SERVICES ACT**

50. Plaintiff restate and reallege paragraphs 1 through 49 as though fully set forth herein.

51. Plaintiff is a "consumer" as defined by Tex. Fin. Code § 394.202(4).

52. Defendant is a "provider" of "debt management service" as defined by Tex. Fin. Code §§ 394.202(6) & (10).

   **a. Violations of Tex. Fin. Code § 394.207**

53.     The TCDMSA, pursuant to Tex. Fin. Code § 394.207, provides that "[a] provider may not engage in false or deceptive advertising,"

54.     Defendant violated § 394.207 through its deceptive advertising directed towards Plaintiff regarding the nature of the services it would perform for Plaintiff. Plaintiff had made more

9

than enough monthly payments for Defendant to begin disputing and removing inaccurate information from her credit reports; however, contrary to the representations inducing Plaintiff to enter into an agreement with Defendant, it failed to perform any of the services it represented it would perform or otherwise perform its services in the manner represented.

55. Defendant further violated § 394.207 by its deceptively informing Plaintiff it could delete names off of Plaintiff's consumer reports when it had no intention, or ability to do so.

### b. Violations of Tex. Fin. Code § 394.209

56. The TCDMSA, pursuant to Tex. Fin. Code § 394.209, outlines the various requirements of the contracts entered into between debt management providers and consumers. One such requirement includes a statement "that establishment of a debt management plan may impact the consumer's credit rating and credit score either favorably or unfavorably . . . ." Tex. Fin. Code § 394.209(b)(7) (emphasis added).

57. Defendant violated § 394.209(b)(7) through its failure to include the required statement in its contract. Upon information and belief, Defendant intentionally failed to include this language given the extent to which it would go towards suggesting that Defendant's services can improve a consumer's credit rating, which would further suggest its status as a credit repair organization under federal law.

### c. Violations of Tex. Fin. Code § 394.210

58. The TCDMSA, pursuant to Tex. Fin. Code § 394.210(c), provides that "[a] provider may not impose fees or other charges upon a consumer or receive payment for debt management services until the consumer has entered into a debt management service agreement with the provider that complies with Section 394.209."

59. Defendant violated § 394.210(c) through its charging of Plaintiff for its debt management services without entering into a contract which complies with Texas law.

### d. Violations of Tex. Fin. Code § 394.212

60. The TCDMSA, pursuant to Tex. Fin. Code § 394.212, outlines a number of prohibited practices on the part of providers.

61. Pursuant to § 394.212(a)(3), a provider may not "lend money or provide credit to the consumer."

62. Defendant routinely violates § 394.212(a)(3) through the nature of its business model. Upon information and belief, Defendant routinely lends consumers money and, as such, is persistently violating and flouting Texas law through the nature of its services.

63. Further, pursuant to § 394.212(a)(9), a provider may not "engage in an unfair, deceptive, or unconscionable act or practice in connection with a service provided to a consumer."

64. Defendant violated § 394.212(a)(9) through the deceptive and unfair nature of the representations made to Plaintiff and manner in which its services were subsequently provided. As outlined above, Defendant unfairly and deceptively failed to perform the represented services, instead seeking to milk Plaintiff for payments.

65. Pursuant to § 394.212(c)(2), a provider is prohibited from including in its contract with a consumer "a waiver of the right to a jury trial, if applicable, in an action brought by or against a consumer."

66. Defendant violated § 393.212(c)(2) through its inclusion of a jury trial waiver in its contract with Plaintiff. The inclusion of such language is clearly prohibited by Texas law; however, Defendant nevertheless included such clause in a further unfair and deceptive effort to stymie Plaintiff's pursuit of justice in the event of a controversy between the parties.

   e. **Violations of Tex. Fin. Code § 394.213**

67. Pursuant to § 394.213, "a provider has a duty to a consumer who receives debt management services from the provider to ensure that client money held by the provider is managed properly at all times."

68. Defendant violated § 394.213 through its failure to ensure that Plaintiff's money was managed properly. As discussed above, Defendant failed to engage in any of the represented services despite there being sufficient funds from which such services could be provided. Defendant's failure to put Plaintiff's money to work in the manner represented illustrates is mismanagement of Plaintiff's payments.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

   b. Awarding Plaintiff actual damages pursuant to Tex. Fin. Code § 394.215(c);

   c. Awarding Plaintiff punitive damages pursuant to Tex. Fin. Code § 394.215(c);

   d. Enjoin Defendant from further violations of law pursuant to Tex. Fin. Code § 394.215(d);,

   e. Awarding Plaintiff's costs and reasonable attorney fees, pursuant to Tex. Fin. Code § 394.215(c); and,

   f. Awarding any other relief this Honorable Court deems just and appropriate.

Dated: June 30, 2023                          Respectfully submitted,

<div style="margin-left:50%">

*/s/ Marwan R. Daher*
Marwan R. Daher, Esq.
Sulaiman Law Group, Ltd.
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
Fax: (630) 575-8188
mdaher@sulaimanlaw.com
*Counsel for Plaintiff*

</div>